**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

JOSÉ LAUREANO-SALGADO,

**Plaintiff,**

v.

UNITED STATES OF AMERICA,

**Defendant.**

**CIVIL. NO. 17-1205 (RAM)**

OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Petitioner José Laureano-Salgado's ("Petitioner" or "Laureano-Salgado") *Motion Under 28 U.S.C § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* ("§ 2255 motion"). (Docket No. 1). Having considered the arguments of the parties at Docket Nos. 1, 11, and 14, the Court **DENIES** Petitioner's § 2255 *motion*. No certificate of appealability shall issue as the § 2255 *motion* fails to make a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). In accordance with Rule 22(b)(1) of the Federal Rules of Appellate Procedure, Petitioner may still seek a certificate directly from the United States Court of Appeals for the First Circuit ("First Circuit"). Judgment of **DISMISSAL WITH PREJUDICE** shall be entered accordingly.

## I.   BACKGROUND

**A. Criminal Case No. 12-cr-00200-15[1]**

On June 20, 2012, a Grand Jury returned a Superseding Indictment ("the Indictment") in case 12-cr-00200. (Docket Nos. 1 and 196). Petitioner was charged in five counts of a 33-count indictment. Id. The Counts included: Count 1: Racketeering Influenced and Corrupt Organizations Act in violation of 18 U.S.C. § 1962(d) and 2; Count 2: Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846, 806 and 2; Count 3: Conspiracy to Possess Firearms During and in Relation to Narcotics Trafficking Offenses in violation of 18 U.S.C. § 924(c)(1)(1); Count 29: Violent Crime in Aid of Racketeering Activity ("VICAR") in violation of 18 U.S.C. § 1959(a)(1) and 2; and Count 30: Use and Carry of a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A), 924(j)(1) and 2. Id. at 3-23 and 52-53.

After a seven-day trial, the jury returned a guilty verdict as to all five counts for Laureano-Salgado and co-defendants Pedro L. Ramírez-Rivera ("Ramírez-Rivera") and Ismael E. Cruz-Ramos ("Cruz-Ramos"). (Docket Nos. 794; 986-990). An Amended Judgment was entered against Laureano-Salgado on October 7, 2013. (Docket No. 1205). He was sentenced therein to forty (40) years as to Count

---

[1] Any reference to a docket entry in this section will only refer to docket entries in Criminal Case No. 12-cr-00200-15.

1, ten (10) years as to Count 2, Twenty (20) years as to Count 3,
Life in Prison Without Possibility of Parole as to Count 29 and
twenty (20) years as to Count 30. (Docket No. 1205 at 3). He was
also sentenced to two (2) years of supervised release as to Count
2. Id. at 4.

Petitioner appealed his judgment, raising multiple issues
regarding jury empanelment, jury instructions, impeachment of
witness, vouching for a witness, and sentencing errors, among
others. (Case No. 12-cr-00200-15, Docket No. 1208; Civil Case No.
17-1205, Docket No. 1 at 2). The Court of Appeals for the First
Circuit ("First Circuit") ultimately affirmed Laureano-Salgado's
conviction and sentence. See e.g., United States v. Ramírez-
Rivera, 800 F.3d 1, 27 (1st Cir. 2015), cert denied, 577 U.S. 1108
(2016), abrogated on other grounds by United States v. Leoner-
Aguirre, 939 F.3d 310 (1st Cir. 2019).

Petitioner subsequently requested the district court order a
new trial stemming from newly discovered evidence allegedly
showing that Christian Toledo Sanchez, alias "Pekeke," the leader
of the gang La Rompe, was killed by members of La Rompe and not by
members of the rival gang La ONU. (Docket No. 1891 at 5-10).
Laureano-Salgado, a member of La ONU, had been found guilty of
killing Pekeke alongside Ramírez-Rivera and Cruz-Ramos. (Docket
Nos. 196 at 52; 1205 at 2). This murder was the predicate "crime
of violence" for his § 924(c) conviction under Count 30 (Use and

Carry of a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A), 924(j)(1) and 2). (Docket Nos. 196 at 53; 1205 at 2). The District Court eventually denied the request for new trial. (Docket No. 1936).

Laureano-Salgado appealed this decision. (Docket No. 1938). The First Circuit affirmed the denial because "the alleged new evidence cannot be reasonably viewed as 'greatly undermin[ing]' the pertinent verdicts." United States v. Laureano-Salgado, 933 F.3d 20, 32 (1st Cir.), cert. denied, 140 S. Ct. 619 (2019), and cert. denied sub nom. Ramirez-Rivera v. United States, 140 S. Ct. 977 (2020) (quotation omitted).

**B. Civil Case No. 17-1205**

In his § 2255 motion, Laureano-Salgado requests that his sentence be remanded for resentencing or, in the alternative, for an evidentiary hearing. (Docket No. 1-1 at 27). His first two grounds for resentencing aver that his counsel provided ineffective assistance of counsel. (Docket Nos. 1 at 5-6; 1-1 at 4-17). The first ground states that "[t]rial counsel was ineffective when he failed to file a motion to suppress the warrantless search of the residence where the firearms and the drugs that were presented against [R]amirez-[R]ivera were submitted during trial." (Docket No. 1 at 5). Whereas the second ground argues that "[t]rial counsel rendered ineffective assistance when he failed to object to the prosecutor vouching for

the testimony of witness [Christian] Figueroa-Viera during the trial." Id. at 6. Furthermore, the third and fourth grounds claim that Laureano-Salgado's sentence must be vacated in light of the Court of Appeals for the Eleventh Circuit's United States v. Johnson, 803 f.3d 610 (11th Cir. 2015) and the United States Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015). (Docket No. 1 at 7-8; 1-1 at 17-27).[2]

On December 13, 2019, Defendant United States of America ("the Government") responded to Petitioner's § 2255 motion ("Response"). (Docket No. 11). Regarding Petitioner's first ground, the Government contends that his counsel did not provide ineffective assistance for failing to move to suppress evidence in another co-defendant's property because Laureano-Salgado lacks standing to suppress said evidence. Id. at 6-7. As to the second ground, it held that Laureano-Salgado's counsel was not ineffective because per First Circuit precedent, once the plea agreement's content was admitted at trial, a prosecutor can comment upon a witness's motivation to testify truthfully. Id. at 7-8. As to the third and fourth grounds, the Government posits that Petitioner is not

---

[2] The Court notes that the § 2255 motion's first, third and fourth grounds inadvertently state that "Ramirez-Rivera's" rather than "Laureano-Salgado's" counsel was ineffective for failing to file a motion to suppress and that his sentence must be vacated in light of the Eleventh Circuit and Supreme Court decisions. (Docket No. 1 at 4, 7-8). The accompanying Memorandum of Law to the §2255 motion correctly states that Laureano-Salgado's sentence must be vacated on those grounds. (Docket No. 1-1). The Court finds this to be a harmless error, particularly taking into account that Ramírez-Rivera filed in this district court an identical § 2255 motion to the one in the case at bar. See Civil Case No. 17-1206, Docket No. 1.

entitled to relief under the Supreme Court's decision because "murder," the predicate offense to Petitioner's § 924(c) conviction, is a "crime of violence" under the elements clause (or the "force clause") of § 924(c). Id. at 8-9. Lastly, it argues that an evidentiary hearing is not proper and that the Court should not grant a certificate of appealability. Id. at 9-10.

On February 18, 2020, Laureano-Salgado replied ("*Reply*") to the Government's *Response*. (Docket No. 14). He reiterates his claim that his trial counsel rendered ineffective assistance by not objecting to the Government's vouching for a cooperating witness which caused an "inference of verification [by the Government] of [the witness's] testimony." Id. at 1-4. He also states that his case requires an evidentiary hearing due to the Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019), which ruled that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. Id. at 4-5. This because the jury verdict left it unclear whether the § 924(c) conviction was based on Count 1 or Count 29. Id. at 5. Lastly, he repeats his request for an evidentiary hearing. Id.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner who is in custody under a sentence imposed by a Federal Court may move to vacate, set aside, or correct his sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court

> was without jurisdiction to impose such
> sentence, or that the sentence was in excess
> of the maximum authorized by law, or is
> otherwise subject to collateral attack.

A petitioner's post-conviction request for relief "must show that his sentence 'reveal[s] fundamental defects which, if uncorrected, will result in a complete miscarriage of justice.'" Lebron-Martinez v. United States, 2021 WL 3609658, at *2 (D.P.R. 2021) (quoting Gomez-Olmeda v. United States, 2021 WL 785725, at *2 (D.P.R. 2021)). Petitioner has the burden of establishing such a defect. Id. Moreover, an evidentiary hearing on a § 2255 petition is not necessary when the motion "is inadequate on its face." Id. (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)). Nor is it necessary when there are no factual issues to be resolved. Id. (quoting Miller v. United States, 564 F.2d 103, 106 (1st Cir. 1977)) ("Where there are no disputed facts crucial to the outcome, leaving only questions of law, [§] 2255 does not require a hearing; the motion may be decided" without an oral presentation).

## III. DISCUSSION

Petitioner's § 2255 motion does not require resolving factual issues as he only presents legal issues. Id. at *2; see also Forteza-Garcia v. United States, 2021 WL 784875, at *2 (D.P.R. 2021). Thus, a hearing is not necessary in this case.

### A. Ground One: Ineffective Assistance of Counsel for Failing to File a Motion to Suppress

Petitioner avers his counsel was ineffective by failing "to file a motion to suppress the warrantless search of the residence where the firearms and the drugs" were found and presented against Laureano-Salgado during trial. (Docket No. 1 at 5). In his petition, Laureano-Salgado references a motion to suppress filed by his co-defendant Cruz-Ramos's counsel regarding guns and narcotics found after a warrantless search of Cruz-Ramos's car and house where another of the defendants implicated in the Indictment, Edwin Bernardo Astacio-Espino, and Cruz-Ramos were located. (Docket No. 1-1 at 12). Ultimately, the First Circuit held that Cruz-Ramos was entitled to a new trial based on suppression error. *See* Ramírez-Rivera, 800 F.3d at 23-35. Therefore, Laureano-Salgado argues his counsel "had an obligation to motion the court for the suppression of the evidence from the illegal search of the residence in order to avoid the spillover effect of the illegally seized evidence being used against Laureano-Salgado during the trial." (Docket No. 1-1 at 12-13).

In response, the Government posits that Laureano-Salgado lacks standing to challenge his counsel's failure to file a motion to suppress because Fourth Amendment rights are *personal* rights.

(Docket No. 11 at 6).[3] Therefore, Laureano-Salgado must show he had an actual and subjective expectation of privacy over the place searched. Id. Since his § 2255 motion does not argue he had such an expectation over the house or car in question, his counsel was under no obligation to file a motion to suppress. Id. Finally, even without that physical evidence, the Government contends there was sufficient testimony from the cooperating witnesses at trial to sustain Laureano-Salgado's conviction. Id. at 7.

The Court agrees with the Government. To start, Laureano-Salgado does not allege he was a victim of an unlawful search and seizure or invasion of privacy. See Alderman v. United States, 394 U.S. 165, 173 (1969). Furthermore, as a defendant challenging an unreasonable search, he "bears the burden of persuasion" that not only did he "exhibit[t] a subjective expectation of privacy, but also that his expectation was justifiable under the attendant circumstances." United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994) (quotation omitted). Factors such as "ownership, possession, control, ability to exclude others and legitimate presence on the premises may be taken into consideration" when determining the reasonableness of an expectation of privacy.

---

[3] The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons ... and effects, against unreasonable searches and seizures." United States v. Sierra-Ayala, 2019 WL 4391542, at *2 (D.P.R. 2019) (quoting U.S. Const. amend. IV); see also United States v. Rivera-Carrasquillo, 933 F.3d 33, 40 (1st Cir. 2019), cert. denied, 2020 WL 1906676, (2020) ("Fourth Amendment rights are personal ones.") (citation omitted).

United States v. Cintron-Echautegui, 2007 WL 9643013, at *5 (D.P.R. 2007), report and recommendation adopted, 2008 WL 11306534 (D.P.R. 2008), aff'd, 604 F.3d 1 (1st Cir. 2010).

Here, Laureano-Salgado failed to show he had control over the searched premises or that, for example, he had any ability to exclude others from entering Cruz-Ramos's car or house. Therefore, he could not have had any reasonable expectation of privacy over either place, or any evidence found therein. As a result, he had no standing to aver a violation of his Fourth Amendment rights through a motion to suppress. *See* United States v. Ramos-Gonzalez, 2010 WL 4181674, at *3 (D.P.R. 2010) ("An accused party lacks standing to challenge the admission of evidence under the Fourth Amendment when he does not have a subjective and reasonable expectation of privacy in the area searched or the evidence seized.") (quoting Minn. v. Carter, 525 U.S. 83 at 91 (1988)).

Thus, Laureano-Salgado's claim for ineffective assistance of counsel as to his first ground fails under the first prong of the Strickland standard. *See* Strickland v. Washington, 466 U.S. 668 (1984). Pursuant to Strickland, to prevail in a claim for ineffective assistance of counsel, the petitioner must show: "[1] that his 'counsel's representation fell below an objective standard of reasonableness' and [2] that such deficiency prejudiced him." Camacho-Santiago v. United States, 2021 WL 813212, at *3 (D.P.R. 2021) (quoting Feliciano-Rodríguez v. United

States, 986 F.3d 30, 36 (1st Cir. 2021)). The two prongs of the Strickland standard can be addressed in any order, and failure to satisfy either is fatal. *See* United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (abrogation on other grounds recognized by United States v. Faust, 853 F.3d 39 (1st Cir. 2017)). Strickland's first prong is surpassed where "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Thus, the Court must determine whether counsel's failure to file a motion to suppress on behalf of Petitioner fell below said standard. Notably, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Likewise, the Court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Casey v. United States, 2021 WL 1821899, at *2 (D.P.R. 2021) (quoting Rossetti v. United States, 773 F.3d 322, 327 (1st Cir. 2014)).

The Court finds that Petitioner's counsel provided effective assistance of counsel. Counsel's failure to file a motion to suppress was **not** unreasonable considering that Laureano-Salgado lacked standing to object to the search of the residence where Cruz-Ramos and the other defendant were located and of Cruz-Ramos's car. *See e.g.*, Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (stating that "[t]rial counsel was under no obligation to raise meritless claims. Failure to do so does not constitute

ineffective assistance of counsel."). As Petitioner has failed to surpass the first Strickland prong, the Court need not address the second. *See* Carrigan, 724 F.3d at 44. Tellingly, Petitioner's *Reply* failed to rebut the Government's contention that he lacked standing to file a motion to suppress evidence over another co-defendant's property.

## B. Ground Two: Ineffective Assistance of Counsel for Failing to Object to the Prosecutor's Questions

Petitioner also avers his counsel was ineffective for failing to object to the prosecutor's purported vouching for the testimony of Christian Figueroa-Viera ("Figueroa-Viera") during Laureano-Salgado's trial. (Docket Nos. 1 at 6; 1-1 at 14-17). Petitioner claims his counsel should have objected to questions made to Figueroa-Viera regarding the terms of his plea and cooperation agreements, his obligations to tell the truth and what would happen to him if he failed to do so. (Docket No. 1-1 at 14-15). These questions were allegedly improper because "[o]nce the jury hears the agreements [sic] requirements, [and] that the witness tells the truth or else suffers the consequences of having additional charges imposed against him, and not being allowed to testify," questions about said agreement lead "the jury to reach a conclusion that the witness' testimony had been verified since the witness had suffered no repercussions[.]" Id. at 16.

In contrast, the Government contends that evidence of a witness's plea agreement is admissible to "dampen the effect of an anticipated attack on that witness's credibility." (Docket No. 11 at 7). Defense counsel purportedly attacked Figueroa-Viera's credibility in his opening statement and throughout cross-examination, thus a review of the plea agreement was proper. Id. at 7-8. The Government then claims that a prosecutor may discuss the witness's motivation to testify truthfully. Id. at 8. Hence, since questions about the agreement's terms were lawful, Petitioner cannot show his counsel was ineffective. Id.

Vouching takes place when a prosecutor tries to strengthen the government's case by implying a "personal belief in a witness's veracity or [suggesting] that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Padilla-Galarza, 990 F.3d 60, 82 (1st Cir. 2021) (quoting United States v. Rodríguez-Adorno, 695 F.3d 32, 40 (1st Cir. 2012); see also Ayala-Vazquez v. United States, 2018 WL 5734595, at *8 (D.P.R. 2018). Admission of plea agreements into evidence is not considered vouching. Notably, Laureano-Salgado conceded "it is perfectly permissible for a prosecutor to introduce a witness's plea agreement on direct examination, even if it includes a truthfulness provision." (Docket No. 1-1 at 16).

Here, the quoted section in Petitioner's § 2255 motion, which is only **two** pages out of the 184-page transcript for just the

second day of a 7-day trial, shows that the prosecutor asked Figueroa-Viera about specific paragraphs in his plea agreement, his responsibility to tell the truth thereunder, and about what would happen if he failed to tell the truth, to which he replied that "[he] couldn't cooperate [with the government] anymore." (Case No. 12-cr-00200-15, Docket No. 986 at 149-152; Case No. 17-1205, Docket No. 1-1 at 14-15). **This does not suffice to show improper vouching by the prosecutor.** *See* Padilla-Galarza, 990 F.3d at 83 ("[n]or do we accept the appellant's argument, tendered without citation to any relevant authority, that the prosecutor's repetition of the information by some thaumaturgical alchemy transformed a proper statement into an improper one.") As evinced by the trial transcript, the prosecution did not integrate into their line of questioning any "'personal assurances' or any suggestion that 'facts not before the jury support[ed] the witness's testimony.'" Padilla-Galarza, 990 F.3d at 83 (quoting United States v. Rosario-Diaz, 202 F.3d 54, 65 (1st. Cir 2000)). Therefore, just as in Ayala-Vazquez v. United States, "the court concludes that no vouching occurred because the jury had access to the whole picture presented by" the witness's plea agreement "and it could 'assess, as best it can, the probable motives or interests the witnesses could have in testifying truthfully or falsely.'" Ayala-Vazquez, 2018 WL 5734595, at *8 (quoting United States v. Martin, 815 F.2d 818, 821 (1st Cir. 1987)).

The Court finds that Petitioner's counsel provided effective assistance to Petitioner. Given that the prosecutor's examination of Figueroa-Viera regarding the terms of his plea and cooperation agreements was lawful, Laureano-Salgado cannot show his counsel's failure to object to improper vouching was below the standard of reasonableness required by Strickland. *See* William v. United States, 2009 WL 3489912, at *5 (D. Mass. 2009) (holding that "[b]ecause the prosecution's references to the plea agreement and its effect on Jean-Baptiste's incentive and obligation to tell the truth were lawful, petitioner cannot show that counsel's failure to object fell below any objective standard of reasonableness."). More so considering that the First Circuit has held that "**[a]n argument that does no more than assert reasons why a witness ought to be accepted as truthful by the jury is not improper witness vouching.**" United States v. Walker-Couvertier, 860 F.3d 1, 12 (1st Cir. 2017) (quoting United States v. Perez-Ruiz, 353 F.3d 1, 10 (1st Cir. 2003)) (emphasis added); *see also* United States v. Millan, 230 F.3d 431, 438 (1st Cir. 2000) (finding no error where "the prosecutor simply pointed out a fact in evidence—that Aleman's plea agreement required her to testify candidly—and asserted that she had upheld her end of the bargain by doing so.") As with the first ground, given that Petitioner failed to surpass the first Strickland prong regarding the ineffective assistance claim in his second ground, the Court need not address the second prong.

## C. Grounds Three and Four: Predicate Offenses and "Crime of Violence"

Petitioner's third and fourth grounds argue that his sentence must be vacated in light of the Court of Appeals for the Eleventh Circuit's <u>United States v. Johnson</u>, 803 f.3d 610,  and the United States Supreme Court's decision in <u>Johnson v. United States</u>, 576 U.S. 591. (Docket No. 1 at 7-8; 1-1 at 17-27). In essence, Laureano-Salgado claims the offense serving as a basis for his § 924(c) charge is not a "crime of violence," thus his § 924(c) conviction should be vacated. (Docket No. 1-1 at 17-27). He maintains that "the statute does not require the threat of violent physical force against persons or property in every case" and that the predicate offense in Count 29 is not a "crime of violence[.]" <u>Id.</u> at 25.

On the other hand, the Government posits that Petitioner is not entitled to relief under the Supreme Court decision  because "murder," the predicate offense to Petitioner's § 924(c) charge, is a "crime of violence" under the elements clause (or "force clause") of § 924(c). (Docket No. 11 at 8-9). It points out that courts have held that federal murder *is* a crime of violence under the elements clause of § 924(c)(3). <u>Id.</u> at 9.

### i.   Section 924 (C)(3)(A) and the approaches to analysis of whether a predicate offense is a "crime of violence".

Section 924(c)(1) provides for enhanced penalties to:

> [A]ny person who, during and in relation to
> any crime of violence or drug trafficking
> crime (including a crime of violence or drug
> trafficking crime that provides for an
> enhanced punishment if committed by the use of
> a deadly or dangerous weapon or device) for
> which the person may be prosecuted in a court
> of the United States, uses or carries a
> firearm, or who, in furtherance of any such
> crime, possesses a firearm[.]

18 U.S.C. § 924(c)(1). Furthermore, Section 924(c)(3) contains two

definitions of the statutory term "crime of violence," namely a

crime that:

> (A) has as an element the use, attempted use,
>     or threatened use of physical force
>     against the person or property of
>     another, or

> (B) that by its nature, involves a
>     substantial risk that physical force
>     against the person or property of another
>     may be used in the course of committing
>     the offense.

18 U.S.C. § 924 (c)(3). Section 924(c)(3)(A) is known as the "**force**

**clause**". *See* United States v. Rose, 896 F.3d. 104, 106 (1st Cir.

2018)(emphasis added). Whereas section 924(c)(3)(B) is known as

the "residual clause." Id. The Court need not dwell on subsection

"B," or any of Laureano-Salgado's claims regarding said

subsection, as it has been declared unconstitutional. S*ee* Davis,

139 S. Ct. at 2233.

As explained by the First Circuit, the first step in

determining whether a statute is a "crime of violence" under

Section 924(c)(3)(A)'s force clause, is to ascertain "whether the

criminal statute of the predicate offense is indivisible or divisible." King v. United States, 965 F.3d 60, 65 (1st Cir. 2020). An indivisible statute contains a "single, indivisible set of elements[,]" instead of containing alternative elements, "that criminalizes a broader swath of conduct than the relevant generic offense." Descamps v. United States, 570 U.S. 254, 258 (2013). It may also "enumerate[] various factual means of committing a single element." United States v. Faust, 853 F.3d 39, 52 (1st Cir. 2017); see also Mathis v. United States, 136 S.Ct. 2243, 2249 (2016) (providing hypothetical examples of indivisible statutes). Conversely, a statute is considered "divisible" when it "sets out one or more elements of the offense in the alternative[,]" thereby "listing potential offense elements." Descamps, 570 U.S. at 257, 260. A "divisible" statute therefore "comprises multiple, alternative versions of the crime." Id. at 262.

To determine whether an indivisible statute is a "crime of violence," courts apply a "categorical approach" that considers "the elements of the crime of conviction, **not the facts of how it was committed**, and assess[es] whether violent force is an element of the crime." United States v. Taylor, 848 F.3d 476, 491 (1st Cir. 2017) (emphasis added). However, for divisible statutes, courts use a "modified categorical approach." This approach is used when certain "alternative elements require the use, attempted use, or threatened use of physical force while others do not[.]"

*King*, 956 F.3d at 66. It consists of analyzing a limited set of *Shepard* documents "such as the charging documents, plea agreements, plea colloquies, jury instructions, and verdict forms [...] to determine which of the statute's alternative elements formed the basis of the prior conviction." United States v. Delgado-Sánchez, 849 F.3d 1, 8 (1st Cir. 2017) (quoting United States v. Castro-Vazquez, 802 F.3d 28, 35 (1st Cir. 2015)). By looking at those documents, courts can "determine which of the enumerated alternatives within the statute constituted the actual crime of conviction." King, 965 F.3d at 66 (citation omitted). These documents also help the reviewing court to "compare[] only this specific offense with the relevant generic offense." United States v. Burghardt, 939 F.3d 397, 406 (1st Cir. 2019) (citing Mathis, 136 S.Ct. at 2249). Moreover, "under the modified categorical approach, if the crime of conviction involves the use, attempted use, or threatened use of physical force against the person or property of another, then the offense qualifies a crime of violence under § 924(c)'s force clause." King, 965 F.3d at 66 (citation omitted).

ii. **The predicate offense in 18 U.S.C. § 1959(a)(1) and 2 is a "crime of violence" for purposes of 18 U.S.C. § 924(c)(3)(A)'s force clause.**

Laureano-Salgado contends the underlying crime to his 924(c)(3) and (j) conviction, *i.e.* the murder of Pekeke set forth

in Count 29, is not a "crime of violence" for § 924(c)'s force clause. (Docket No. 1-1 at 25-27). The Court disagrees.

The Puerto Rico Penal Code's Article 105 defines murder as "kill[ing] another human being with intent." P.R. Laws Ann. tit. 33, § 4733. The relevant part of the Penal Code further defines *first-degree* murder as "[a]ny murder committed by means of poison, stalking or torture, **or with premeditation**." P.R. Laws Ann. tit. 33, § 4734(a). Whereas "[a]ny other intentional killing of a human being constitutes second degree murder." P.R. Laws Ann. tit. 33, § 4734(a).

While the First Circuit has not weighed in on the issue, Article 106 of the Puerto Rico Penal Code as it pertains to *first degree murder*, is a divisible statute. As the highlighted text shows, the statute provides that murder can be committed through several means including "with premeditation." Moreover, while not in the context of the Racketeering Influenced and Corrupt Organizations Act, the First Circuit has held that *second-degree* murder and attempted murder under Puerto Rico law requires the "use of physical force" and therefore qualifying as a "violent felony" under the analogous Armed Career Criminal Act's ("ACCA") force clause. *See* United States v. Baez-Martinez, 258 F. Supp. 3d 228, 232 (D.P.R. 2017), aff'd, 950 F.3d 119 (1st Cir. 2020) ("Accordingly, second degree murder, as defined by Puerto Rico

law, categorically requires the "use of physical force" under the
ACCA.) To wit, the Baez-Martinez court held that:

> It can hardly be denied that an unnatural
> death is a type of physical injury—in fact it
> is the ultimate physical injury. [. . .] Thus,
> if a person causes the unlawful death of
> another person, they have caused physical
> injury, and causing physical injury
> "categorically involves the use of force
> capable of causing physical pain or injury to
> another person."

Id. at 233 (quoting United States v. Castleman, 572 U.S. 157, 175
(2014) (Scalia, J., concurring) (internal citations and quotation
marks omitted). The First Circuit later clarified, in affirming
the decision in Baez-Martinez, that "since murder always results
in death (and death is the ultimate injury), the violent-force
requirement is satisfied. […] [I]f murder requires violent force
because death results, then attempted murder does, too, because
the defendant attempted to reach that result." Baez-Martinez, 950
F.3d at 132 (1st Cir. 2020), cert. denied, 2021 WL 2519179 (U.S.
2021), reh'g denied, 2021 WL 3711654 (U.S. 2021). The Fourth
Circuit Court of Appeals reached a similar conclusion in In re
Irby when it concluded that "second-degree retaliatory murder is
a crime of violence under the force clause of § 924(c)." In re
Irby, 858 F.3d 231, 238-39 (4th Cir. 2017). It reached this
conclusion in part because "**[c]ommon sense dictates that murder is**

**categorically a crime of violence under the force clause.**" Id. at 237 (citation omitted).

Pursuant to the modified categorical approach, the Court reviewed the Indictment and the trial transcript. (Case No. 12-cr-00200-15, Docket Nos. 196 and 986-990; 1423, 1433 and 1451). These documents show that Laureano-Salgado's conviction for Count 30 was premised on a finding that Petitioner was guilty on Count 29 of the Indictment.

Count 29 of the Indictment charged Laureano-Salgado and his co-defendants with:

> [A]s consideration for the receipt of, and as consideration for a promise and an agreement to pay, a thing of pecuniary value from the enterprise, and for the purpose of gaining entrance to and maintaining and increasing position in the enterprise, an enterprise engaged in racketeering activity, [. . .] aiding and abetting each other and others known and unknown, did **intentionally**, as that term is defined in Puerto Rico Penal Code, Article 23, murder Christian Toledo Sanchez, a/k/a "Pekeke," **in violation of the Puerto Rico Penal Code, Articles 105 and 106 (2004).**
>
> All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

(Case No. 12-cr-00200-15, Docket No. 196 at 52) (emphasis added).

Furthermore, although the indictment did not specify whether the VICAR conviction was predicated on a first-degree or second-degree murder charge, the District Court instructed the jury on first-degree murder. When explaining the jury instruction for

Count 29 and the Government's burden to prove that Laureano-Salgado

and his co-defendants committed a crime of violence, that is

Pekeke's murder, the Judge overseeing the trial explained that:

> Articles 105 and 106 of the Puerto Rico Penal Code
> prohibit murder and first degree murder. To commit
> murder the Government must prove, beyond a reasonable
> doubt, that the Defendant intentionally caused the death
> of a person. To commit first degree murder, as I told
> you, the Government must prove that the person caused
> the death of another human being, that the person
> intended to cause that death, **and that the person did so
> with premeditation.**

(Case No. 12-cr-00200-15, Docket No. 1451 at 46)(emphasis

added).

Hence, both the indictment and jury instructions ensured that

the jury knew the predicate offense was murder in the first degree.

*See* United States v. Woods, 2021 WL 4237166, at *4 (6th Cir. 2021)

("By describing and naming the correct predicate offense, the

indictment and jury instruction left no confusion for the jury

that the predicate offense was a crime of violence.") (United

States v. Nixon, 825 F. App'x 360, 364 (6th Cir. 2020)).

Considering the jury found Laureano-Salgado guilty on all counts,

the Jury found him guilty of *first-degree* murder of Pekeke, the

predicate offense and "crime of violence" object of Count 29 and

30. (Case No. 12-cr-00200-15, Docket Nos. 794 and 1205). Therefore,

Laureano-Salgado was charged with and found guilty of a "crime of

violence" under Section 924(c)(3)(A)'s force clause and his

Section 924(c) and (j) convictions are valid. Likewise, although not required, the indictment **charged Laureano-Salgado with the predicate offense**. *See* <u>United States v. Frye</u>, 402 F.3d 1123, 1127 (11th Cir. 2005) ("[S]ection 924 does not require that a defendant be convicted of, or even charged with, the predicate offense"). *See also* <u>United States v. Munoz-Fabela</u>, 896 F.2d 908, 911 (5th Cir. 1990) ("[I]t is only the fact of the offense, and not a conviction, that is needed to establish the required predicate.").

Further, Petitioner's Section 924(c) and (j) convictions stem from Count 30 of the Indictment which charged Laureano-Salgado and his co-defendants with:

> [A]iding and abetting each other and others known and unknown, did knowingly use and carry a firearm, as defined in Title 18, United States Code, Section 921(a)(3), that is, a firearm of unknown brand, caliber, and serial number, during and in relation to a crime of violence, as that term is defined in Title 18, United States Code, Section 924(c)(3), for which they may be prosecuted in a Court of the United States, to wit, a violation of Title 18, United States Code, Section 19 5 9(a)(1), **as charged in Count Twenty-Nine of the Indictment**, which is realleged and incorporated by reference herein, and in the course of that crime, the defendants did cause the death of Christian Toledo Sanchez, a/k/a "Pekeke," through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, **in that the defendants, with malice aforethought, did unlawfully kill Christian Toledo Sanchez, a/k/a "Pekeke," by shooting him with the firearm willfully, deliberately, maliciously, and with premeditation.**

> All in violation of Title 18, United States
> Code, Sections 924(c)(l)(A), 924(j)(l), and 2.

(Case No. 12-cr-00200-15, Docket No. 196 at 53) (emphasis added).

As seen above, Count 30 incorporated Count 29 of the Indictment by reference and it also *specifically* charged Laureano-Salgado and his co-defendants with the elements constituting the predicate offense in 18 U.S.C. § 1959(a)(1) and 2 which the Court will not reiterate. Therefore, the record and common sense guide the Court's interpretation that *first degree murder* is a crime of violence and that the predicate offense of Laureano-Salgado's § 924(c) charge – murder in aid of racketeering activity – is a crime of violence under the elements clause of § 924(c)(3)(A). *See* <u>United States v. Turkette</u>, 452 U.S. 576, 580 (1981) (stating that "authoritative administrative constructions should be given the deference to which they are entitled, **absurd results are to be avoided.**"); <u>Baez-Martinez</u>, 950 F.3d at 128 (noting that "'in terms of moral depravity,' murder is often said to stand alone among all other crimes."); <u>United States v. D'Amario</u>, 412 F.3d 253, 255 (1st Cir. 2005) (holding that courts should apply "common sense" when analyzing criminal statutes). Lastly, other Circuit Courts which also requires "premeditation" when sentencing for first-degree murder have held that first degree murder is a crime of violence when analyzing a commission of VICAR. *See* <u>United States v. Mathis</u>, 932 F.3d 242, 265 (4th Cir. 2019), <u>cert. denied sub nom. Uhuru v.</u>

United States, 140 S. Ct. 639 (2019), and cert. denied sub nom. Stokes v. United States, 140 S. Ct. 640 (2019) (applying the categorical approach to the commission of VICAR by committing first-degree murder under Virginia law and finding that because "[a] conviction for first-degree murder under Virginia law requires the 'willful, deliberate, and premeditated' killing of another," then the "crime of first-degree murder under Virginia law qualifies categorically as a crime of violence under the force clause, and we affirm the capital defendants 'Section 924(c) convictions.")

## D. No Certificate of Appealability Will be Issued

28 U.S.C.A. § 2253(c)(2) establishes that a District Court judge may only issue a certificate of appealability of a section 2255 proceeding "if the applicant has made a substantial showing of the denial of a constitutional right." In the case at bar, the Court will not issue a certificate of appealability because, for the reasons discussed above, Petitioner failed to make such a showing. See e.g., Morales Torres v. United States, 2019 WL 4744217 at *3 (D.P.R. 2019) (denying certificate of appealability in a case dismissing Section 2255 petition because Hobbs Act Robbery is a predicate crime of violence under Section 924 (c)'s force clause).

Civil No. 17-1205 (RAM)                                                    27

### IV.   CONCLUSION

Based on the foregoing, Petitioner José Laureano-Salgado's *Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255* (Docket No. 1) is **DENIED**. Judgment of dismissal **WITH PREJUDICE** will be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2021.

<u>S/ RAÚL M. ARIAS-MARXUACH</u>
United States District Judge